SYLLABUS

(This syllabus is not part of the opinion of the Court. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Supreme Court. Please note that, in the interest of brevity, portions of any opinion may not have been summarized).

**State v. Roger Paul Frye (A-30-12) (070975)**

**Argued February 3, 2014 -- Decided June 3, 2014**

**FERNANDEZ-VINA, J., writing for a unanimous Court.**

In this appeal, the Court considers whether a previous conviction for driving while intoxicated (DWI), N.J.S.A. 39:4-50, may serve to enhance the sentence for a subsequent conviction for refusal to submit to a breathalyzer test (refusal), N.J.S.A. 39:4-50.4a.

In 2008, defendant was arrested and charged with DWI, refusal, and reckless driving. He pled guilty to refusal and, in exchange, the State dismissed the DWI and reckless driving charges. The municipal court judge accepted defendant's guilty plea and further concluded that there was proof beyond a reasonable doubt that defendant refused to submit to a breathalyzer test. Because defendant had two previous DWI convictions from 2001 and 2004, the judge sentenced him as a third-time offender under the refusal statute and suspended his license for ten years. Defendant filed a motion for reconsideration arguing that his two prior DWI convictions could not enhance his refusal sentence and that he therefore should have been sentenced as a first-time refusal offender. The municipal court denied defendant's motion for reconsideration. Defendant appealed and, after a de novo review, the Law Division found that the municipal court correctly sentenced defendant as a third-time refusal offender. Defendant thereafter filed a petition for post-conviction relief (PCR) in the Law Division contending that his sentence as a third-time offender was contrary to State v. Ciancaglini, 204 N.J. 597 (2011), in which the Court held that a prior refusal conviction cannot be used to enhance a subsequent DWI sentence under the DWI statute. The Law Division rejected defendant's argument and denied PCR. The Appellate Division affirmed in an unpublished decision. The Court granted defendant's petition for certification. 212 N.J. 455 (2012).

**HELD**: The Court reaffirms its holding in In re Bergwall, 85 N.J. 382 (1981). A prior DWI conviction may enhance the sentence for a subsequent refusal conviction under the refusal statute, N.J.S.A. 39:4-50.4a.

1. The paramount goal of statutory interpretation is to ascertain and effectuate the Legislature's intent. When the language of a statute is clear on its face, the sole function of the courts is to enforce it according to its terms. If, however, a statute's plain language is ambiguous or subject to multiple interpretations, the Court may consider extrinsic evidence including legislative history and committee reports. (pp. 12-13)

2. The refusal statute provides that a person convicted of refusal will be subject to an enhanced penalty if "the refusal was in connection with a second[, third, or subsequent] offense under this section." N.J.S.A. 39:4-50.4a. The length of the driver's license suspension differs depending on whether the conviction is the driver's first, second, or third or subsequent offense. Ibid. It was not until 1977 that the statute distinguished between initial and subsequent offenses. The statute originally required a six-month license revocation for a driver's refusal to submit to a chemical test. L. 1966, c. 142, § 4. In 1977, the Legislature amended the law to mandate a ninety-day license revocation "unless the refusal was in connection with a subsequent offense of this section, in which case, the revocation period shall be for 1 year." L. 1977, c. 29, § 4; N.J.S.A. 39:4-50.4(b). That amendment was prompted by a Motor Vehicle Study Commission report recommending enhanced penalties for refusal convictions that were subsequent to a prior DWI conviction. Report of the New Jersey Motor Vehicle Study Commission (Sept. 1975), 147-53. The Commission recommended the change because, under the then-current law, it was advantageous for an individual who had a prior DWI conviction to refuse a breath test because the refusal penalty was less severe than the penalty for a second DWI, and the refusal deprived the State of evidence needed to obtain a second DWI conviction. Id. at 147-48, 150-51. (pp. 13-15)

3. This Court previously addressed whether a prior DWI conviction enhances a subsequent refusal sentence in In re Bergwall, 85 N.J. 382 (1981), rev'g on dissent, 173 N.J. Super. 431 (App. Div. 1980). At the time, the refusal

1

statute called for an enhanced penalty if "the refusal was in connection with a subsequent offense of this section." N.J.S.A. 39:4-50.4(b). The Appellate Division majority found that the word "section" "unmistakably means N.J.S.A. 39:4-50.4 itself" and therefore held that the phrase "subsequent offense of this section" was limited to prior refusal convictions, and not prior DWI convictions. In re Bergwall, 173 N.J. Super. at 433. Judge Lora, dissenting, disagreed and found that a prior DWI conviction enhances a subsequent refusal sentence under the refusal statute. Id. at 437. He stated that the majority erroneously emphasized the word "section" and should have instead given meaning to the phrase "in connection with." Ibid. He emphasized that a refusal conviction can only be "in connection with" a DWI arrest, and cannot be "in connection with" another refusal conviction, because refusal is an offense that is dependent upon a police officer stopping someone for a suspected DWI and requesting that he or she take a breathalyzer test. Ibid. The dissenting judge also stated that the statute's legislative history, including the New Jersey Motor Vehicle Study Commission's report, revealed that the Legislature intended to have a prior DWI conviction qualify as a prior offense under the refusal statute. Id. at 437-38. This Court thereafter reversed the majority's decision "for the reasons expressed in the dissenting opinion of Judge Lora in the Appellate Division." Bergwall, 85 N.J. at 383. (pp. 16-19)

4. A few months after the Appellate Division's decision in Bergwall, Assemblyman Herman introduced a bill suggesting amendments to the refusal statute that would call for an enhanced penalty if "the refusal was in connection with a subsequent offense under R.S. 39:4-50." Assemb. 2293, 199th Leg. (Dec. 8, 1980). After this Court's subsequent Bergwall decision, the Senate Judiciary Committee rejected that proposal and made amendments to the bill which replaced the term "R.S. 39:4-50" with "this section." Sen. Comm. Amend. to Assemb. 2293, 199th Leg. (May 14, 1981). The final text of the statute required an enhanced penalty if "the refusal was in connection with a subsequent offense under this section." L. 1981, c. 512, § 2 (emphasis added). The Legislature is presumed to be aware of judicial constructions of statutory provisions. Despite the Legislature's amendments to the refusal statute after this Court's Bergwall decision, the statute has maintained "this section" language similar to the language at issue in Bergwall. The Legislature's acquiescence reflects its agreement with this Court's interpretation of the refusal statute in Bergwall. (pp. 19-21)

5. In Ciancaglini, the Court held that a prior refusal conviction may not be used to enhance a subsequent DWI sentence under the DWI statute. 204 N.J. at 599. The Court reasoned that, "although N.J.S.A. 39:4-50 and N.J.S.A. 39:4-50.4a are both part of a statutory complex designed to rid the highways of drunk drivers and to make our roads safer, each is a separate section (each referring to 'this section') with a different, albeit related, purpose, and each has different elements." Id. at 606. The Ciancaglini Court, however, acknowledged Bergwall and reiterated that the dissent's decision, which the Court adopted, was grounded in the language "in connection with a subsequent offense of this section." Id. at 610 n.10. Furthermore, the Ciancaglini Court differentiated the "in connection with" language of the refusal statute with the DWI statute, which "contains no reference whatsoever to the refusal statute." Id. at 610. Given the distinction between the DWI statute and the refusal statute, Bergwall, rather than Ciancaglini, controls the outcome of this case. (pp. 21-22)

6. The continued application of Bergwall furthers New Jersey's strong public policy against drunk driving. If prior DWI convictions did not serve to enhance subsequent refusal sentences, it would be advantageous for an individual with a prior DWI conviction to refuse to take a breathalyzer test. That result would undermine the enforcement of the DWI statute and the Legislature's purpose of "curb[ing] the senseless havoc and destruction caused by intoxicated drivers." State v. Tischio, 107 N.J. 504, 512 (1987). (pp. 23-24)

The judgment of the Appellate Division is **AFFIRMED**.

**CHIEF JUSTICE RABNER; JUSTICES LaVECCHIA, ALBIN, and PATTERSON; and JUDGES RODRÍGUEZ and CUFF (both temporarily assigned) join in JUSTICE FERNANDEZ-VINA's opinion.**

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

       v.

ROGER PAUL FRYE,

    Defendant-Appellant.

          Argued February 3, 2014 – Decided June 3, 2014

          On certification to the Superior Court,
          Appellate Division.

          John Menzel argued the cause for appellant
          (Mr. Menzel attorney; Roger Paul Frye
          submitted a brief pro se).

          Joseph A. Glyn, Deputy Attorney General,
          argued the cause for respondent (John J.
          Hoffman, Acting Attorney General of New
          Jersey, attorney).

    JUSTICE FERNANDEZ-VINA delivered the opinion of the Court.

    In this appeal, defendant, Roger Paul Frye, challenges his conviction and sentence for refusal to submit to a breathalyzer test, N.J.S.A. 39:4-50.4a.

    On May 12, 2009, defendant pled guilty to refusal to submit to a breathalyzer test and was sentenced as a third-time offender, thereby receiving a ten-year driver's license suspension, along with fines and penalties.  Defendant's sentence was based on the municipal court judge's finding that

1

under the refusal statute, defendant was a third-time offender because he had two previous convictions for driving while intoxicated (DWI), N.J.S.A. 39:4-50.  Defendant's conviction and sentence for refusal to submit to a breathalyzer test were affirmed on de novo review by the Law Division and also were affirmed by the Appellate Division.

The plain language of the refusal statute requires that a municipal court judge sentence an individual based on the number of prior offenses that he or she has committed.  N.J.S.A. 39:4-50.4a.  The statute provides that a person convicted of refusal will be subject to enhanced penalties if "the refusal was in connection with a second[, third, or subsequent] offense under this section."  Ibid.

In 1981, the Court considered the same issue that is now presented by this case:  whether a previous DWI conviction may serve to enhance a sentence for a subsequent refusal sentencing.  In re Bergwall, 85 N.J. 382 (1981), rev'g on dissent, 173 N.J. Super. 431 (App. Div. 1980).  There, this Court concluded a prior DWI may enhance a subsequent refusal sentence under the refusal statute.  Id. at 383.  More recently, in State v. Ciancaglini, 204 N.J. 597, 599 (2011), this Court discussed the inverse of the issue presented in In re Bergwall, supra, 173 N.J. Super. at 432.  Specifically, the Ciancaglini Court addressed whether a prior refusal conviction may be used to

2

enhance a subsequent DWI sentence under the DWI statute. Ciancaglini, supra, 204 N.J. at 599. This Court answered the question in the negative. Id. at 610-11.

We now address whether, in light of Ciancaglini and the Legislature's post-Bergwall amendments to the refusal statute, we must overturn In re Bergwall. For the reasons set forth in this opinion, we re-affirm In re Bergwall. We conclude that defendant's prior DWI convictions were appropriately considered for purposes of his subsequent refusal conviction. Accordingly, we affirm the judgment of the Appellate Division.

I.

On December 19, 2008, defendant was arrested and charged with DWI, N.J.S.A. 39:4-50, refusal to submit to a breathalyzer test, N.J.S.A. 39:4-50.4a, and reckless driving, N.J.S.A. 39:4-97.

Earlier that evening, Sergeant Sack of the Haddon Heights Police Department was monitoring vehicle speeds on radar on East Atlantic Avenue. He observed a vehicle stop in the middle of Atlantic Avenue, and make an abrupt left-hand turn across the grass of 500 Grove Street. Sergeant Sack then observed the vehicle drive into the parking lot of a building, and come to a complete stop. Sergeant Sack pulled behind the vehicle and exited his car to approach the driver. Defendant was the driver of the car.

3

Sergeant Sack approached defendant and spoke to him. According to Sergeant Sack, he smelled alcohol coming from defendant's car and observed that defendant appeared to be very incoherent. Defendant then commented that he was possibly a diabetic. Sergeant Sack proceeded to ask defendant for documentation of his diabetic condition. Defendant did not produce any documents confirming that condition.

At that point, Sergeant Sack called Detective Long to respond to the location because Detective Long was the detective on patrol for alcohol-related driving offenses. Both Detective Long and Officer Volpe arrived at the scene. Detective Long conducted field-sobriety balance tests. Based on the result of those tests, Officer Volpe placed defendant under arrest for suspicion of driving under the influence.

Officer Volpe then transported defendant to police headquarters. When they arrived at headquarters, Officer Volpe, a certified Alcotest operator, attempted to have defendant provide a breath sample for the Alcotest. Defendant agreed to take the test. Officer Volpe provided defendant with instructions on how to use the Alcotest machine. Defendant attempted to take the test on four occasions, each of which was preceded by instructions.

During defendant's first three attempts to perform the breathalyzer test, he did not achieve the minimum breath volume

4

required for the machine. On his fourth attempt, defendant sucked inward rather than blowing outward into the hose. Thereafter, although there was no outright verbal refusal, Officer Volpe determined that defendant's actions warranted the conclusion that defendant refused to submit to the breathalyzer test.

## II.

On March 24, 2009, defendant appeared in the Haddon Heights Municipal Court for a case management conference. At the conference, defendant confirmed that he had previously entered a plea of not guilty to all three charges.

Following denial of a motion to suppress evidence, defendant pled guilty to refusal to submit to a breathalyzer test, N.J.S.A. 39:4-50.4a. In exchange for the guilty plea, the State dismissed the DWI, N.J.S.A. 39:4-50, and reckless driving, N.J.S.A. 39:4-97, offenses on the basis that there were "significant issues with regard to the medical evidence of the State."

During the plea colloquy, consistent with Rule 3:9-2, defendant acknowledged on the record that he had a right to plead not guilty, a right to a trial, and that it was the State's obligation to prove the charges beyond a reasonable doubt. He then confirmed that he was aware that, by pleading

5

guilty, he was waiving these rights. Defendant also stated that he was entering the guilty plea voluntarily.

Defendant admitted that he operated a motor vehicle in Haddon Heights on December 19, 2008, after consuming alcohol. He said that he had a medical condition that night which prevented him from remembering exactly what happened. Although defendant recalled being stopped by a police officer, he did not remember events from the stop, including talking to a police officer or performing balance tests.

Defendant replied affirmatively when the court asked him whether he was taken back to the police station and whether he was asked to submit to a breathalyzer test. However, when the court asked what his reply was when asked to perform the test, defendant stated, "I don't recall, but apparently I refused to take the test." After defendant acknowledged that he did not have "a hundred percent crystal clear recollection" of the events, the court inquired if defendant recalled whether he understood what Officer Volpe was saying when explaining how to use the Alcotest. Defendant replied, "Possibly, possibly I didn't. Probably, probably I didn't." He then admitted that he had attempted to take the Alcotest, but had not followed Officer Volpe's instructions.

The court also heard testimony from Sergeant Sack and Officer Volpe. Sergeant Sack described his observations of

6

defendant's vehicle and his subsequent interactions with defendant during the stop. Officer Volpe then testified that defendant initially agreed to take the Alcotest and attempted to take the test on four occasions. Officer Volpe stated that he gave defendant specific instructions on how to take the test for each of his four attempts; however defendant did not follow the instructions.

The municipal court judge then accepted defendant's guilty plea. He found defendant's plea to be knowing, intelligent, and voluntary. The judge further concluded that there was proof beyond a reasonable doubt that defendant refused to submit to a breathalyzer test by not following Officer Volpe's instructions.

After hearing statements from defense counsel, the prosecutor, and defendant, the municipal court judge sentenced defendant. He recognized that defendant had two previous DWI convictions from 2001 and 2004. The judge explained that defendant's two prior DWI convictions "can serve to enhance a subsequent conviction" for a refusal offense. He noted that he was mandated to sentence defendant as a third-time offender under the refusal statute. Accordingly, the court suspended defendant's license for ten years. The court also imposed a fine, court costs, and a DWI surcharge.

Following his sentencing, defendant filed a pro se motion for reconsideration of the sentence and, in the alternative, for

7

reconsideration of the refusal conviction.  He argued that his two prior DWI convictions could not enhance his sentencing for the refusal offense.  Therefore, according to defendant, he should have been sentenced as a first-time offender.  On July 14, 2009, after hearing oral argument, the municipal court rejected defendant's motion for reconsideration of the sentence.

At a subsequent hearing on September 22, 2009, the court also rejected defendant's motion for reconsideration of the refusal conviction.  Defendant asserted he was unaware of the ten-year loss of driving privileges when he entered his guilty plea.

Defendant appealed pro se to the Law Division for a trial de novo.  He asserted the following six claims:  the municipal court erred in accepting his guilty plea; the municipal court erred in denying his motion to suppress; the municipal court judge imposed an illegal sentence; the municipal court erred in denying him a jury trial; he did not understand the breathalyzer instructions; and trial counsel provided ineffective assistance.

After addressing, and rejecting, each of defendant's claims, the Law Division judge found defendant guilty of refusal to submit to a breathalyzer test.  The court also concluded that the municipal court judge had properly sentenced defendant as a third-time offender because defendant's two previous DWI convictions elevated the refusal conviction to a third offense.

8

The court found that the sentence was mandated by law and, therefore, imposed the same sentence that defendant had received in municipal court. Specifically, defendant was sentenced to a ten-year license suspension, as well as the mandated fines and penalties.

Defendant then filed a pro se petition for post-conviction relief (PCR) in the Law Division on February 2, 2011.[1] In particular, defendant contended that his sentence as a third-time offender was contrary to this Court's recent Ciancaglini decision. On March 9, 2011, the Law Division judge rejected defendant's arguments and denied his application for PCR.

On April 27, 2011, defendant appealed both the entire judgment of the Law Division's decision and the denial of his PCR petition. In an unpublished opinion, the Appellate Division deemed most of defendant's claims meritless and unworthy of discussion.

The appellate panel specifically addressed, and rejected, two of defendant's claims. The panel concluded that the judge properly weighed the Slater factors in denying the motion to withdraw the guilty plea.[2] It also found that defendant did not receive ineffective assistance of counsel. The Appellate Division affirmed the Law Division's denial of defendant's

---

[1] Defendant never filed a PCR petition in the municipal court.
[2] State v. Slater, 198 N.J. 145, 157-58 (2009).

9

motion to withdraw his plea, and denial of defendant's PCR petition.

We granted defendant's petition for certification. 212 N.J. 455 (2012).

### III.

Defendant argues that the Appellate Division erred by not following the logic of Ciancaglini. He maintains that although Ciancaglini addresses a factually opposite case, (there, the prior conviction was for refusal, not DWI) the Court's decision in Ciancaglini supports the proposition that, for sentencing purposes, the refusal and DWI statutes are separate and distinct statutes.

Defendant advances two other arguments. First, he asserts that there was an insufficient factual basis to support his guilty plea. Defendant argues that the municipal court judge never advised him that a ten-year license suspension would be imposed, and that the court should have recognized his plea was not voluntary when he indicated that he had really not consumed any alcohol that night.

Second, defendant argues that he was entitled to a jury trial for his refusal charge because of the seriousness of the penalty which could be imposed upon him. He contends that the "criminal nature" of the breathalyzer statute mandates a jury trial. N.J.S.A. 39:4-50.

10

The State argues that defendant was properly sentenced as a third-time offender under the refusal statute. The State maintains that this very issue was decided in In re Bergwall. The State emphasizes that in In re Bergwall, this Court rejected the same position advocated by defendant and held that a prior DWI conviction enhances a subsequent refusal sentence.

The State also argues that Ciancaglini is inapplicable because it addressed a factually inverse situation involving the DWI statute rather than the refusal statute. In particular, the State points out that in Ciancaglini, the Court addressed whether a prior refusal conviction could be used as a sentencing enhancement for a subsequent DWI conviction.

The State asserts that the question before the Ciancaglini Court is inapposite to the issue presented here and was previously addressed in In re Bergwall. Moreover, it maintains that this Court's holding in Ciancaglini did not overturn In re Bergwall. Rather, the Ciancaglini opinion implicitly reaffirmed In re Bergwall by finding that the DWI statute does not contain any cross-reference to the refusal statute, thereby suggesting that the refusal statute includes a cross-reference to the DWI statute.

The State further asserts that the municipal court judge had a sufficient factual basis to support defendant's guilty plea. With regard to defendant's claim that he was entitled to

11

a jury trial, the State argues that defendant's claim lacks merit.

                                IV.

Our evaluation of defendant's claim requires that we first consider the plain language of the refusal statute.  State v. Marquez, 202 N.J. 485, 499 (2010).  The paramount goal of statutory interpretation is to ascertain and effectuate the Legislature's intent.  State v. Shelley, 205 N.J. 320, 323 (2011) (citing DiProspero v. Penn, 183 N.J. 477, 492 (2005)).  "In most instances, the best indicator of that intent is the plain language chosen by the Legislature."  State v. Gandhi, 201 N.J. 161, 176 (2010) (citing DiProspero, supra, 183 N.J. at 492).

"[W]hen the language of a statute is clear on its face, 'the sole function of the courts is to enforce it according to its terms.'"  Hubbard v. Reed, 168 N.J. 387, 392 (2001) (quoting Sheeran v. Nationwide Mut. Ins. Co., 80 N.J. 548, 556 (1979)).  In carrying out that function, we read words "with[in] their context" and give them "their generally accepted meaning."  N.J.S.A. 1:1-1.

Courts cannot "rewrite a plainly-written enactment of the Legislature nor presume that the Legislature intended something other than that expressed by way of the plain language."  O'Connell v. State, 171 N.J. 484, 488 (2002).  If, however, the

Court determines that "a literal interpretation would create a manifestly absurd result, contrary to public policy, the spirit of the law should control." Turner v. First Union Nat'l Bank, 162 N.J. 75, 84 (1999). Furthermore, if a statute's plain language is ambiguous or subject to multiple interpretations, the Court "may consider extrinsic evidence including legislative history and committee reports." Marquez, supra, 202 N.J. at 500.

This appeal centers upon the Legislature's intent in enacting the refusal statute, N.J.S.A. 39:4-50.4a. The statute requires municipal courts to revoke the driving privileges of drivers who refuse to submit breath samples to be tested for their blood alcohol content. In relevant part, the law provides:

> the municipal court shall revoke the right to operate a motor vehicle of any operator who, after being arrested for a violation of R.S.39:4-50 or section 1 of P.L.1992, c. 189 (C.39:4-50.14), shall refuse to submit to a test provided for in section 2 of P.L.1966, c.142 (C.39:4-50.2) when requested to do so, for not less than seven months or more than one year unless the refusal was in connection with a second offense under this section, in which case the revocation period shall be for two years or unless the refusal was in connection with a third or subsequent offense under this section in which case the revocation shall be for ten years.
>
> [N.J.S.A. 39:4-50.4a.]

As demonstrated by the statutory language, penalties are based on the number of prior offenses the driver has committed. Ibid. The length of the driver's license suspension differs depending on whether the conviction is the driver's first, second, or third or subsequent offense. Ibid.

For a first-time refusal conviction, the driver is subject to a driver's license suspension ranging from seven months to one year. Ibid. If "the refusal was in connection with a second offense under this section," the driver is subject to a two-year license suspension. Ibid. The statute further requires a ten-year license suspension where the refusal conviction is "in connection with a third or subsequent offense under this section." Ibid.

The legislative history of the refusal statute reveals that it was not until 1977 that the statute distinguished between initial and subsequent offenses, and set forth increased penalties for subsequent offenses. L. 1977, c. 29, § 4. As originally enacted under N.J.S.A. 39:4-50.4, the statute required a six-month license revocation for a driver's refusal to submit to a chemical test. L. 1966, c. 142, § 4. However, in 1977, the Legislature amended the refusal law by mandating a ninety-day license revocation "unless the refusal was in connection with a subsequent offense of this section, in which

14

case, the revocation period shall be for 1 year." L. 1977, c. 29, § 4; N.J.S.A. 39:4-50.4(b).

Importantly, a Motor Vehicle Study Commission report prompted the inclusion of that language. See Report of the New Jersey Motor Vehicle Study Commission (Sept. 1975), 147-53. The Commission recommended a one-year suspension if the refusal was subsequent to a prior DWI conviction that occurred within the past fifteen years. Id. at 153. In making that recommendation, the Motor Vehicle Study Commission noted:

> If an individual is a second offender under the impaired statute, it is advantageous for him to refuse the test, since the penalty he must receive, if convicted, is two years loss of license. If he is charged with driving while under the influence, he faces either a two or ten year revocation, depending on his prior record. By refusing the test, he deprives the state of objective evidence of intoxication or impairment (and perhaps evidence of his own innocence), and risks a six month loss of license. . .
>
> It is presently advantageous for an individual to refuse the breath test since the refusal suspension penalty is so much shorter than any penalty imposed under N.J.S.A. 39:4-50 except for a first "impaired" offense. That advantage should be removed from the law so that more individuals will be induced to take the test.
>
> [Id. at 147-48, 150-51.]

V.

15

This Court addressed the interpretation of the refusal statute in In re Bergwall.  In that case, the defendant was convicted of refusal in 1977 after previously having been convicted of DWI.  In re Bergwall, supra, 173 N.J. Super. at 431-32.  The issue before the Appellate Division was whether a prior DWI enhances a sentence for a subsequent refusal conviction.  Id. at 432.

At the time, the refusal statute provided as follows:

> Any revocation of the right to operate a motor vehicle over the highways of this State for refusing to submit to a chemical test shall be for 90 days <u>unless the refusal was in connection with a subsequent offense of this section</u>, in which case, the revocation period shall be for 1 year. . .
>
> [N.J.S.A. 39:4-50.4(b) (emphasis added).]

The majority of the In re Bergwall panel held that the phrase "subsequent offense of this section" as used in N.J.S.A. 39:4-50.4(b) was limited to prior convictions for refusal, and therefore, a prior DWI did not enhance a sentence for a subsequent refusal conviction.  In re Bergwall, supra, 173 N.J. Super. at 433.

The majority first concluded that the word "section" "unmistakably means N.J.S.A. 39:4-50.4 itself."  Ibid.  The majority also noted that refusal to submit to a breathalyzer test deals with "an entirely independent and separate subject" from a drunk driving offense.  Id. at 434.  Based on these

16

conclusions, the majority held that a previous DWI conviction could not enhance a penalty for refusal as it would result in anomalies that were not intended by the Legislature.  Id. at 434-35.

The dissenting opinion by Judge Lora expressed the view that the phrase "subsequent offense of this section" encompassed the drunk driving section of Title 39, N.J.S.A. 39:4-50.  Id. at 437.  The dissent stated that the statutory interpretation adopted by the majority erroneously emphasized the word "section" in the phrase "unless the refusal was in connection with a subsequent offense of this section."  Ibid.  Rather, according to the dissent, the court should have instead given meaning to the phrase "in connection with."  Ibid.

The dissent emphasized that a refusal can only be "in connection with" a DWI arrest and a request to take a breathalyzer test because refusal of a breathalyzer test is an offense that is dependent upon a police officer stopping someone for a suspected DWI and requesting that he or she take a breathalyzer test.  Ibid.  The dissenting opinion pointed out that the majority's interpretation of "unless the refusal was in connection with a subsequent offense of this section", and its reliance on the word "section" as referring to the "refusal statute," defied logic because a refusal cannot be "in connection with" another refusal.  Ibid.

17

The dissenting judge also stated that the statute's legislative history revealed that the Legislature intended to have a prior DWI conviction qualify as a prior offense under the refusal statute.  Id. at 437-38.  He further opined that the "[m]ost persuasive" and "controlling" relevant legislative history was found in the New Jersey Motor Vehicle Study Commission's Report.  Id. at 438 (citing Report of the New Jersey Motor Vehicle Study Commission (Sept. 1975), 147-53).  The dissenting judge noted that the Report of the New Jersey Motor Vehicle Study Commission revealed that the Commission recommended certain penalties because it sought to remove a driver's advantage in refusing a breathalyzer test when he or she had a prior DWI conviction.  Ibid.  He also found that the summary chart in the "Statement to Senate, No. 1423," which was prepared by the Senate Law, Public Safety and Defense Committee, indicated that a court should impose a one-year license suspension for refusing a breathalyzer test when a prior DWI conviction occurred within the previous fifteen years.  Id. at 439.

This Court reversed the majority panel's decision in In re Bergwall and adopted the dissent's analysis.  In re Bergwall, supra, 85 N.J. at 383.  Specifically, the Court stated that it was reversing the panel "for the reasons expressed in the

18

dissenting opinion of Judge Lora in the Appellate Division."
Ibid.

The Appellate Division decided In re Bergwall on April 25, 1980. A few months after the panel's decision, on December 8, 1980, Assemblyman Herman introduced a bill suggesting amendments to the refusal statute. That bill included language stating:

> Any operator of a motor vehicle who, after being arrested for a violation of R.S. 39:4-50, shall refuse to submit to the chemical test provided for in section 3 of P.L. 1966, c. 142 (C. 39:4-50.3) when requested to do so, shall be subject to revocation of the right to operate a motor vehicle for 90 days unless the refusal was in connection with a subsequent offense under R.S. 39:4-50, in which case the revocation period shall be for 1 year.
>
> [Assemb. 2293, 199th Leg. (Dec. 8, 1980) (emphasis added).]

After this Court's March 1981 In re Bergwall decision, the Senate Judiciary Committee rejected that proposal and made amendments to the bill which replaced the term "R.S. 39:4-50" with "this section." Sen. Comm. Amend. to Assemb. 2293, 199th Leg. (May 14, 1981). Therefore, the final text of the statute read, "unless the refusal was in connection with a subsequent offense under this section." L. 1981, c. 512, § 2 (emphasis added). Thus, the phrase "of this section," which existed at

19

the time of our In re Bergwall decision, changed to "under this section."[3]

Despite the change to the refusal statute's language after our In re Bergwall decision, In re Bergwall remains binding precedent.  "As a principle of statutory construction, the legislative branch is presumed to be aware of judicial constructions of statutory provisions."  State v. Singleton, 211 N.J. 157, 180-81 (2012) (citations omitted).  A close examination of the amendments made after this Court's In re Bergwall decision reveals that the refusal statute has maintained language that is nearly identical to the language at issue in In re Bergwall.

Despite having opportunities to change the refusal statute, the Legislature has not made any significant changes to the statute since this Court's 1981 In re Bergwall decision.  At the time In re Bergwall, supra, 173 N.J. Super. at 432, was decided, the refusal statute provided: "unless the refusal was in connection with a subsequent offense of this section." N.J.S.A. 39:4-50.4(b).  The refusal statute currently states: "unless the refusal was in connection with a second offense under this

---

[3] Since this 1981 amendment, the Legislature has amended the refusal statute on many other occasions.  See L. 1981, c. 537, § 2; L. 1994, c. 184, § 2; L. 1997, c. 277, § 2; L. 1999, c. 185, § 5; L. 2004, c. 8, § 1; L. 2007, c. 267, § 2; L. 2009, c. 201, § 5.  However, those amendments are not relevant to our analysis of the issue in this case.

section. . . or unless the refusal was in connection with a third or subsequent offense under this section." N.J.S.A. 39:4-50.4a. This legislative acquiescence reflects the Legislature's agreement with this Court's interpretation of the refusal statute. See State v. Wilhalme, 206 N.J. Super. 359, 362 (App. Div. 1985), (recognizing that "an examination of the legislative history in chronological juxtaposition with the litigation history of Bergwall" supports the conclusion that statutory amendments do not change application of In re Bergwall to refusal statute), certif. denied, 104 N.J. 398 (1986); see also State v. Fielding, 290 N.J. Super. 191, 193 (App. Div. 1996).

VI.

We turn our attention now to defendant's argument that the Appellate Division's decision in this case conflicts with our decision in Ciancaglini. Defendant's reliance on Ciancaglini is misplaced.

As mentioned previously, in Ciancaglini, supra, 204 N.J. at 599, this Court addressed the inverse of the issue presented here: whether a prior refusal conviction may be used to enhance a subsequent DWI sentence under the DWI statute, N.J.S.A. 39:4-50. This Court held that a "defendant's prior refusal conviction may not be considered as a 'prior conviction' for purposes of [that defendant's] subsequent DWI conviction." Ibid. This Court reasoned that, "although N.J.S.A. 39:4-50 and

21

N.J.S.A. 39:4-50.4a are both part of a statutory complex designed to rid the highways of drunk drivers and to make our roads safer, each is a separate section (each referring to 'this section') with a different, albeit related, purpose, and each has different elements." Id. at 606.

In Ciancaglini, this Court also acknowledged the In re Bergwall holding. Id. at 610 n.10. Although confined to a footnote, this Court reiterated that the dissent's decision, which the Court adopted, was grounded in the language "in connection with a subsequent offense of this section." Ibid. Furthermore, in our analysis of the Ciancaglini case, this Court differentiated the "in connection with" language of the refusal statute with the DWI statute, which "contains no reference whatsoever to the refusal statute." Id. at 610.

Recognizing that nothing in the DWI statute suggests that its references to prior violations refer to anything other than DWI convictions, and because the Legislature did not amend the DWI and refusal statutes to express an alternative intent, this Court found that the references to prior violations only refer to DWI convictions and not to refusal convictions. Id. at 610-11.

Accordingly, given the distinction between the DWI statute and the refusal statute, In re Bergwall, rather than Ciancaglini, controls the outcome of this case.

22

VII.

We note that public policy further supports upholding our In re Bergwall decision. As noted by the panel in Wilhalme, supra, 206 N.J. Super. at 362-63, the continued application of In re Bergwall recognizes New Jersey's strong public policy against drunk driving. In re Bergwall furthers that policy by creating harsher penalties for individuals who commit multiple alcohol-related driving offenses.

If prior DWI convictions were not to enhance subsequent refusal sentences, it would be tactically advantageous for an individual to refuse a breathalyzer test. See In re Bergwall, supra, 173 N.J. Super. at 438 (Lora, P.J.A.D., dissenting) (citing Report of the Motor Vehicle Study Commission (September 1975) at 147-48, 150-51). Individuals who have been previously convicted of drunk driving would refuse to take a breathalyzer test because the penalty for the refusal would be the seven-month penalty rather than the more severe two-year penalty. Ibid.

Furthermore, those individuals would also be able to escape punishment for a subsequent DWI conviction by refusing the breathalyzer test. Ibid. Such a refusal would deny the State the necessary evidence to obtain a conviction for that subsequent DWI offense. Ibid. That result would undermine the enforcement of the DWI statute and the Legislature's purpose of

23

"curb[ing] the senseless havoc and destruction caused by intoxicated drivers." State v. Tischio, 107 N.J. 504, 512 (1987).

This appeal also presents the corollary issues of whether, under the circumstances of this case, defendant should have been permitted to withdraw his guilty plea, and whether he was entitled to a jury trial. We decline to address those claims because they are untimely. See R. 2:4-1(a).

VIII.

The judgment of the Appellate Division is affirmed.

CHIEF JUSTICE RABNER; JUSTICES LaVECCHIA, ALBIN, and PATTERSON; and JUDGES RODRÍGUEZ and CUFF (both temporarily assigned) join in JUSTICE FERNANDEZ-VINA's opinion.

24

SUPREME COURT OF NEW JERSEY

NO.    A-30    SEPTEMBER TERM 2012

ON CERTIFICATION TO        Appellate Division, Superior Court


STATE OF NEW JERSEY,

     Plaintiff-Respondent,

          v.

ROGER PAUL FRYE,

     Defendant-Appellant.


DECIDED        June 3, 2014
_____Chief Justice Rabner_____PRESIDING
OPINION BY        Justice Fernandez-Vina
CONCURRING/DISSENTING OPINIONS BY
DISSENTING OPINION BY

| CHECKLIST | AFFIRM | |
|---|---|---|
| CHIEF JUSTICE RABNER | X | |
| JUSTICE LaVECCHIA | X | |
| JUSTICE ALBIN | X | |
| JUSTICE PATTERSON | X | |
| JUSTICE FERNANDEZ-VINA | X | |
| JUDGE RODRÍGUEZ (t/a) | X | |
| JUDGE CUFF (t/a) | X | |
| TOTALS | 7 | |

1